JENKINS & HOGIN, LLP
Lauren B. Feldman (SBN 238629)
(lfeldman@localgovlaw.com)
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90260
310-643-8448 (office)
310-643-8441 (fax)

MARISCAL WEEKS McINTYRE
 & FRIEDLANDER, P.A.
Glenn M. Feldman (Pro Hac Vice Application Pending)
(glenn.feldman@mwmf.com)
D. Samuel Coffman (Pro Hac Vice Application Pending)
(sam.coffman@mwmf.com)
2901 N. Central Avenue Suite 200
Phoenix, Arizona 85012-2705
602-285-5138 (office)
602-285-5100 (fax)
Attorneys for Defendants
Chumash Casino Resort and Does 1-10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MADRIGAL,<br><br>Plaintiff,<br><br>v.<br><br>CHUMASH CASINO RESORT, and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO. CV10-7415 GW (SSx)<br><br>**DEFENDANT CHUMASH CASINO RESORT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B) MOTION TO DISMISS**<br><br>**DATE:** January 24, 2010<br>**TIME:** 8:30 A.M.<br>**COURTROOM:** Judge Wu |

Defendant Chumash Casino Resort hereby submits its Memorandum of Law in support of its Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim upon which relief can be granted under Rule 12 (b)(6), Federal Rules of Civil Procedure.

# I.

## INTRODUCTION

The Chumash Casino Resort ("Chumash Casino") is a wholly owned gaming operation of the Santa Ynez Band of Chumash Indians ("Santa Ynez Band" or the "Tribe") and is located on the Santa Ynez Indian Reservation. As alleged in the Complaint, Plaintiff Madrigal was previously employed by the Chumash Casino. Plaintiff's Complaint alleges employment claims under Title VII and the Americans with Disabilities Act ("ADA").

The Complaint should be dismissed for lack of jurisdiction because the Chumash Casino, as a wholly owned tribal enterprise, enjoys the same sovereign immunity as the Tribe itself, which deprives this Court of both subject matter jurisdiction over the claims asserted here and personal jurisdiction over the Defendant. Further, as a tribal enterprise, the Chumash Casino is expressly excluded from the definition of "employer" under both Title VII and the ADA and therefore even if the Court had jurisdiction, the employment claims asserted by Plaintiff are not claims upon which relief can be granted against the Defendant.

# II.

## STATEMENT OF FACTS

The Santa Ynez Band of Chumash Indians is a federally recognized Indian Tribe with its reservation located in Santa Barbara County, California. See Declaration of Vincent Armenta attached hereto as Exhibit "A" at ¶ 3. The Santa Ynez Band operates the Chumash Casino on its tribal reservation as a tribal enterprise. *Id.* at ¶ 8. The Chumash Casino is not a legal entity, but simply the name under which the Tribe operates its casino/resort enterprise. *Id.*

The Chumash Casino operates under a Compact between the Tribe and the State of California. *Id.* at ¶ 6. That Compact was approved by the Santa Ynez General Council and is authorized under both federal and State law. *Id.*

DEFENDANT'S MEMORANDUM OF LAW

1    Under applicable federal law and the Compact, only federally recognized Indian
2    tribes can own and operate casinos in California. *Id.* at ¶ 7.

3    The Chumash Casino is the principal source of income to the Tribe from which
4    tribal activities and governmental services are funded. *Id.* at ¶ 9. The Chumash Casino
5    is also a major source of employment for members of the Tribe and other community
6    residents, and currently employs approximately 1500 employees. *Id.* at ¶ 10.

7    Under the Santa Ynez Band's Compact with the State of California, the Chumash
8    Casino's activities are primarily regulated by a tribal regulatory body called the "Tribal
9    Gaming Agency." Armenta Declaration at ¶ 11. The Tribal Gaming Agency was
10   created by tribal ordinance. *Id.*

11   At no time did the Tribe waive its sovereign immunity and consent to jurisdiction
12   in the federal or state courts of California in connection with this matter. *Id.* at ¶ 13.

13                                          **III.**

14                                 **LEGAL ARGUMENT**

15   A.    **Indian Tribes Enjoy Sovereign Immunity and Cannot Be Sued**
16         **in Federal or State Court Absent the Express Consent of the**
17         **United States Congress or the Tribe.**

18   It is a basic principle of federal Indian law that Indian tribes enjoy sovereign
19   immunity from suit. Just as the United States may not be sued without its consent,
20   *United States v. Testan*, 424 U.S. 399 (1976), it is equally well-established that an
21   Indian tribe may not be sued in either federal or state court unless Congress or the tribe
22   consents to such suit. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*,
23   523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) ("As a matter of federal
24   law, an Indian tribe is subject to suit only where Congress has authorized the suit or the
25   tribe has waived its immunity"); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 , 98
26   S.Ct. 1670, 56 L.Ed.2d 106 (1978) ("Indian tribes have long been recognized as
27   possessing the common-law immunity from suit traditionally enjoyed by sovereign
28   powers."); *Puyallup Tribe Inc. v. Department of Game*, 433 U.S. 165, 98 S.Ct. 2616, 53

1    L.Ed.2d 667 (1977); *United States v. United States Fidelity and Guaranty Co.*, 309 U.S.

2    506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Imperial Granite Co. v. Pala Band of Mission*

3    *Indians*, 940 F.2d 1269 (9th Cir. 1991).[1]

4        Such immunity is jurisdictional. *Pan American Company v. Sycuan Band of*

5    *Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1984). Absent an effective waiver, a court

6    has no choice but to dismiss the action, "irrespective of the merits of [the] claims." *Id.*

7    (citing *Puyallup Tribe* 433 U.S. at 173 and *United States Fidelity and Guaranty*

8    *Company*, 309 U.S. at 512 (1940)).

9    **B.**     **The Chumash Casino, as a Wholly Owned Tribal Enterprise, is**

10           **Entitled to the Protections of Tribal Sovereignty.**

11        In *Allen v. Gold Country Casino,* 464 F. 3d 1044 (9th Cir. 2006), an ex-employee

12    of the Gold Country Casino asserted that although the owner of the Casino, the Berry

13    Creek Rancheria of Tyme Maidu Indians in California, was immune from suit, that the

14    immunity did not extend to the Gold Country Casino. The Ninth Circuit disagreed and

15    clearly held that tribal casinos such as the Chumash Casino are entitled to the

16    protections of tribal sovereignty:

17        This immunity [tribal sovereignty immunity] extends to business

18        activities of the tribe, not merely to governmental activities.

19        When the tribe establishes an entity to conduct certain activities,

20        the entity is immune if it functions as an arm of the tribe. The

21        question is not whether the activity may be characterized as a

22

---

[1]    Such immunity is rooted in the unique historical relationship between Indian tribes and the United States government: tribes are immune from suit because they are sovereigns predating the Constitution and because such immunity is necessary to preserve their autonomous political existence. *Three Affiliated Tribes v. World Engineering*, 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) ("The common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance"); *United States v. Oregon,* 657 F.2d 1009, 1013 (9th Cir. 1981). Moreover, it has been held that tribal sovereign immunity is necessary to preserve and protect tribal assets from claims and judgments that would soon deplete tribal resources. *Maryland Casualty Co. v. Citizens National Bank of North Hollywood,* 361 F.2d 517, 521-22 (5th Cir. 1966); *Cogo v. Central Council of Tlingit and Haida Indians,* 465 F. Supp. 1286 (D. Al. 1979). *See generally Atkinson v. Haldane,* 569 P.2d 151, 157-63 (Alaska, 1977) (discussion of public policy bases for tribal sovereign immunity).

4

business, which is irrelevant under *Kiowa* [*Tribe v. Manufacturing Technologies, Inc.*, 532 U.S. 751 (1998)], but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe.

\* \* \*

[The Casino] is no ordinary business.  The Casino's creation was dependent upon government approval at numerous levels, in order to conduct gaming activities permitted only on the auspices of the Tribe.  The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d)(1), required the Tribe to authorize a Casino through a tribal ordinance and an interstate gaming compact.  The tribe in California entered into such a compact 'on a government-to-government basis.'

These extraordinary steps were necessary because the Casino in not a mere revenue-producing tribal business (although it is certainly that).  The IGRA provides for the creation and operation of Indian casinos to promote 'tribal economic development, self-sufficiency, and strong tribal governments.' One of the principal purposes of the IGRA is 'to insure that the Indian tribe is the primary beneficiary of the gaming operation.' The compact that created that Gold Country Casino provides that the Casino will 'enable the Tribe to develop self-sufficiency, promote tribal economic development, and generate jobs and revenues to support the Tribe's government and governmental services and programs.'

With the Tribe owning and operating the Casino, there is no question that these economic and other advantages inure to the benefit of the Tribe.  Immunity of the Casino directly protects

5

1       the sovereign Tribe's treasury, which is one of the historic

2       purposes of sovereign immunity in general.   In light of the

3       purposes for which the Tribe founded this Casino and the

4       Tribe's ownership and control of its operations, there can be

5       little doubt that the Casino functions as an arm of the Tribe.  It

6       accordingly enjoys the Tribe's immunity from suit.

7 464 F.3d at 1046-47 (Citations omitted).

8      Precisely the same analysis applies here.  The Chumash Casino is a tribal entity

9 operating under a government to government Compact between the Santa Ynez Band

10 and the State of California; it is wholly owned and operated by the Santa Ynez Band;

11 the creation of the Chumash Casino was dependent upon government approval on

12 numerous levels in order to conduct gaming activities that are permitted only under the

13 auspices of the Santa Ynez Band and consistent with the terms of IGRA; the Chumash

14 Casino promotes tribal economic development, self-sufficiency and strong tribal

15 government for the Santa Ynez Band; and the Tribe is the primary beneficiary of the

16 Chumash Casino.  Therefore, as noted by the Ninth Circuit in *Gold Country*, Defendant

17 Chumash Casino is entitled to the same sovereign immunity as the Tribe itself.  Because

18 the Tribe has not waived that immunity, the Court is without jurisdiction to hear this

19 matter and the Complaint should therefore be dismissed.[2]

---

[2] Although the Complaint identifies in its caption, "Does I-X," there is no further reference to Does in the body of the Complaint except for a vague reference to "Defendants" in the plural.  Out of an abundance of caution, the Tribe would point out that the law is well settled that sovereign immunity applies to tribal officials and employees when sued for actions taken in their official capacity. *Linneen v. Gila River Indian Community,* 276 F.3d 489, 492 (9th Cir. 2002) (tribal immunity "extends to tribal officials acting in their official capacity and within the scope of their authority"); *Cook v. Avi Casino Enterprises,* 548 F.3d 718, 727 (9th Cir. 2008) (same protection applies to tribal employees); *Kenai Oil & Gas, Inc. v. Dept. of the Interior,* 522 F. Supp. 521, 531 (D. Utah 1981), aff'd, 671 F.2d 383 (10th Cir. 1982) (tribal sovereign immunity cannot be evaded simply by bringing suit against tribal officers and employees in their representative capacity).

6

**C.**   **Indian Tribes and Tribal Enterprises are Exempt From the Definition of "Employer" Under Title VII and the Americans With Disabilities Act.**

Even if the Court had subject matter and personal jurisdiction, this case should still be dismissed because Congress has expressly exempted Indian tribes from the scope of the definition of "employer" as used both in Title VII, 42 U.S.C. § 2000(e)(b) ("[t]he term 'Employer' ... does not include ... an Indian tribe ...."), and under the Americans With Disabilities Act, 42 U.S.C. § 12111(5)(b)(1) (same exclusion).  Thus, Congress clearly intended that Indian tribes would not be subject to employment-related suits under those Acts.

As with tribal sovereignty, courts have uniformly held that the statutory exemptions afforded to Indian tribes under these Acts apply equally to tribal organizations and businesses. *See, e.g., Pink v. Modoc Indian Health Project Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (finding corporate entity created by two tribes entitled to tribal exemption under Title VII); *Duke v. Absentee Shawnee Tribal Housing Authority*, 199 F.3d 1123, 1125 (10th Cir. 1999) (tribal exemption applied to tribal housing authority organized under state law); *Dille v. Council of Energy Resource Tribes*, 801 F.2d 373, 375 (10th Cir. 1986) (tribal exemption applied to business consortium made up of thirty-nine tribes); *Wardle v. Ute Indian Tribe*, 623 F.2d 670, 672 (10th Cir. 1980) ("Indian tribes and businesses operating on or near reservations are excluded from the employment prohibitions of Title VII").  As these cases acknowledge, the statutory exemptions in Title VII and the ADA plainly demonstrate Congress' recognition of Indian tribes' right of self-government and their ability to organize and govern their own businesses.

Because Defendant Chumash Casino is therefore not an "employer" under either Title VII or the ADA, Plaintiff's claims brought under those statutes must be dismissed as failing to state claims upon which relief can be granted.  FRCP 12 (b)(6).

7

## IV.

## CONCLUSION

For the foregoing reasons, Defendant Chumash Casino respectfully requests that the Court grant its Motion to Dismiss.

**DATED** this 14th day of December, 2010.

**JENKINS & HOGIN, LLP**

Lauren B. Feldman
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, California 90266

**MARISCAL WEEKS McINTYRE
& FRIEDLANDER, P.A.**

Glenn M. Feldman
D. Samuel Coffman
(Pro Hac Vice Applications Pending)
2901 N. Central Ave. Suite 200
Phoenix, Arizona 85012

U:\ATTORNEYS\GMF\Santa Ynez\Madrigal\pleadings\Memorandum in Support of MTD.doc

8

**EXHIBIT A**

1  JENKINS & HOGIN, LLP
   Lauren B. Feldman (SBN 238629)
2  (lfeldman@localgovlaw.com)
   1230 Rosecrans Avenue, Suite 110
3  Manhattan Beach, California  90260
   310-643-8448 (office)
4  310-643-8441 (fax)

5  Attorneys for Defendants
   Chumash Casino Resort and Does 1-10

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9  JOSE LUIS MADRIGAL,                │   CASE NO. CV10-7415 GW (SSx)

10           Plaintiff,

11       v.                                        DECLARATION OF
                                                   VINCENT ARMENTA
12  CHUMASH CASINO RESORT, and DOES
    1-10, Inclusive,

13

14           Defendants.

15       I, Vincent Armenta, being first duly sworn, declare and state as follows:

16       1.    I am the Chairman of the Santa Ynez Band of Chumash Indians ("Santa

17  Ynez" or the "Tribe"). I have held the position of Tribal Chairman since December, 1999

18       2.    I am over the age of eighteen and competent to make this declaration. The

19  facts set forth in this declaration are based upon my personal knowledge and upon records

20  maintained in the normal course of business by the Santa Ynez Band and the Chumash Casino

21  Resort ("Chumash Casino").

22       3.    The Santa Ynez Band is a federally recognized Indian tribe with a

23  governing body recognized as such by the United States Secretary of the Interior. The Tribe

24  occupies the Santa Ynez Indian Reservation in Santa Barbara County, near the community of

25  Santa Ynez.

26

4.     Under the Tribe's Articles of Organization (which is our constitution), the ultimate governing body of the Santa Ynez Band is the General Council, made up of all adult members of the Tribe over the age of 21.

5.     The General Council, in turn, elects a Chairman and a four member Business Council that has certain specific powers to conduct tribal business on a day-to-day basis.   The Business Council consists of the Tribal Chairman, the Vice-Chairman, the Secretary-Treasurer and two Members.

6.     In September, 1999, the Santa Ynez Band entered into a Tribal State Gaming Compact with the State of California (the "Compact").   The Compact was approved by resolution of the General Council and was entered into under the authority of the federal Indian Gaming Regulatory Act ("IGRA") and as authorized by the voters of California, who approved Proposition 5 in the general election of March, 2000.

7.     Under IGRA and our Compact, only federally recognized Indian tribes can own and operate casinos in California.

8.     The Santa Ynez Band owns and operates the Chumash Casino as a tribal enterprise.   The Chumash Casino is not a legal entity but simply the name under which the Santa Ynez band operates its casino/resort enterprise.

9.     The Casino is the principal source of tribal revenue for the Santa Ynez Band.   The vast majority of our tribal programs and governmental services are funded through Casino revenues.

10.     The Casino is also a major employer in Santa Barbara County, providing jobs for tribal members and other members of the local community.   Currently, the Casino employs approximately fifteen hundred (1500) people.

11.     Under our Compact with the State, the Casino's activities are primarily regulated by a tribal regulatory body called the "Tribal Gaming Agency."   The Tribal Gaming

1  Agency was created by tribal ordinance. Under that ordinance, the Tribal Gaming Agency

2  consists of five members of the Tribe who are elected by the General Council.

3         12.   The Tribal Gaming Agency exercises certain specified regulatory functions.

4  These include, for example, conducting background investigations of and licensing Casino

5  employees, monitoring casino activities to ensure compliance with the Compact and other

6  legal requirements, investigating alleged violations, imposing penalties or sanctions for

7  regulatory violations and auditing the Casino's books and records. These tribal regulatory

8  activities are carried out in cooperation with federal regulation provided by the National Indian

9  Gaming Commission and state regulation as provided by the California Gambling Control

10  Commission and the Attorney General's office.

11         13.   The Santa Ynez Band has not waived its tribal sovereign immunity in

12  connection with this lawsuit.

13         14.   I declare under penalty of perjury of the laws of the United States that the

14  foregoing is true and correct.

15

16                                        VINCENT ARMENTA

17  Dated:   12-8-10

18

19  U:\ATTORNEYS\GMF\Santa Ynez\Madrigal\Armenta Declaration.doc

20

21

22

23

24

25

26